UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONNARD KENYON NELSON,

                    Petitioner,

                                        Case No. 06-15402
v.                                      Honorable David M. Lawson

THOMAS BIRKETT,

                    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Jonnard Kenyon Nelson, presently confined at the Michigan Reformatory in Ionia,

Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The

petitioner pleaded guilty to second-degree murder and first-degree criminal sexual conduct in the

Genesee County, Michigan circuit court and was sentenced to concurrent prison terms of 43 years

9 months to 66 years 8 months on each count. He alleges that he is incarcerated in violation of his

constitutional rights because his guilty plea was involuntary, he did not have competent counsel, his

sentence was disproportionate and based on incorrectly-scored guidelines, and proceedings in the

trial of a codefendant were marred by various irregularities. The respondent asserts that the state

court's adjudication of the petitioner's claims was consistent with federal law, some of the claims

are based only on state law and therefore are unreviewable by this Court, and the petitioner's guilty

plea waived review of most of his other claims. The Court agrees that the petitioner's claims do not

warrant habeas relief. Therefore, the habeas petition will be denied.

I.

The petitioner was charged by the Genesee County, Michigan prosecuting attorney with first-degree premeditated murder, felony murder, conspiracy to commit first-degree premeditated murder, kidnapping, first-degree criminal sexual conduct, being a felon in possession of a firearm, and possession of a firearm during the commission of a felony. He was also charged as an habitual offender, third offense. The charges arose from the torture, sexual penetration, and execution of eighteen-year-old Johnny Ray McFadden on January 18, 2003, in Flint, Michigan. The petitioner and five other men were charged with the crimes.

On July 22, 2003, the prosecutor amended the first count from first-degree premeditated murder to second-degree murder. The petitioner then pleaded no contest to second-degree murder, Mich. Comp. Laws § 750.317, and first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b. In return, the prosecutor dismissed the other charges and the notice charging the petitioner as an habitual offender. There was no sentence agreement in place, but the petitioner was expected to pay restitution and to acknowledge that two of his co-defendants did horrible things to the victim.

On September 4, 2003, the trial court sentenced the petitioner to imprisonment for two concurrent terms of 43 years 9 months to 66 years 8 months. The petitioner moved to withdraw his guilty plea or for re-sentencing, but the trial court denied his motion after holding a hearing on November 29, 2004. The Michigan Court of Appeals denied the petitioner's application for leave to appeal "for lack of merit in the grounds presented," *People v. Nelson*, No. 259873 (Mich. Ct. App. Apr. 20, 2005), and on November 29, 2005, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Nelson*, 474 Mich. 936, 706

N.W.2d 22 (2005).  Reconsideration was denied on February 27, 2006.  *See People v. Nelson*, 474

Mich. 1066, 711 N.W.2d 302 (2006).

The petitioner signed and dated his habeas corpus petition on November 29, 2006.  He

alleges that he is in custody in violation of the Constitution and laws of the United States because

of the following errors:

1.  The petitioner's no contest plea was not voluntary because it was induced by his attorney's false promise of a sentence of 22-1/2 to 37-1/2 years in prison;

2.  Trial counsel was ineffective by failing to object to improper guideline scoring, not investigating possible defenses and interviewing witnesses, failing to discuss strategy and defenses with the petitioner, refusing to let the petitioner testify if he went to trial, failing to raise the defense of duress, and failing to request a mental competency examination;

3.  The sentencing guidelines were scored incorrectly, the sentence was disproportional, and the sentencing facts were not proven beyond a reasonable doubt;

4.  The petitioner was ordered to pay the full amount of the restitution;

5.  The petitioner's rights were compromised by several pretrial irregularities, such as his interrogation without counsel present, improper witness manipulation during the codefendant's trial; the codefendants' testimony at the preliminary examination was inconsistent and not credible; two additional firearms counts were added on the day of trial, and the codefendants' statements were not disclosed until the morning of trial.

The respondent urges the Court to deny the habeas petition on the grounds that the petitioner's

allegations of error were waived by his no-contest plea, are not cognizable on habeas corpus review,

or lack merit.  The petitioner replies that his issues are cognizable and were not waived by his plea,

the state court's decision was contrary to clearly established Supreme Court law, and each claim has

merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the great writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)&(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Knowles v. Mirzayance*, __ U.S. __, __, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not "'"an unreasonable application of clearly established Federal law"'" for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v.*

*Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

<div align="center">A.</div>

The petitioner's first claim attacks his convictions on the grounds that his no contest plea was involuntary and the proceedings were plagued with error. The petitioner alleges that his plea was not voluntary and knowing because it was based on his attorney's promise that all the charges would be dropped if he pleaded no contest to second-degree murder and that he would be sentenced within the sentencing guidelines range, which was 22 years 6 months to 37 years 6 months. The petitioner also claims that he was pressured into pleading no contest by his attorney's "do-it-now-or-never" attitude and his attorney's admonition that the petitioner could be found guilty merely by association with others.

"A guilty or no-contest plea involves a waiver of many substantial constitutional rights, *see Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and a court may accept a guilty or no-contest plea only where it is a 'voluntary[,] . . . knowing, intelligent act [] done with sufficient awareness of the relevant circumstances and likely consequences,' *see Brady v. United States*, 397 U.S. 742, 748 (1970)." *Fautenberry v. Mitchell*, 515 F.3d 614, 636-37 (6th Cir. 2008). A guilty plea and, by analogy, a no contest plea must be supported by "an affirmative showing that it was intelligent and voluntary." *Boykin*, 395 U.S. at 242. The Sixth Circuit has stated that:

> [a] plea is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970). The constitution requires the circumstances to reflect that the defendant was informed of all the direct consequences of his plea. *Id*. A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).

*United States v. Ormsby*, 252 F.3d 844, 849 (6th Cir. 2001). A showing of intelligence and voluntariness generally is made through production of a transcript of state court proceedings to establish that the plea was made voluntarily. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)). The Supreme Court has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady*, 397 U.S. at 748. Therefore, a no-contest plea is voluntary if it is made with full knowledge of its direct consequences, and it will stand unless it is made under duress or as a result of threats, misrepresentations, or improper inducements. *Id.* at 755.

The lawyers in this case explained the plea agreement on the record at the plea hearing on July 22, 2003. The prosecutor stated that the petitioner would plead guilty to second-degree murder and first-degree criminal sexual conduct in return for having all the other charges against him dismissed. The prosecutor stated that the petitioner would have to pay restitution, register as a sex offender, and acknowledge that two co-defendants did horrible things to the victim. The prosecutor and defense counsel clarified on the record that there was no agreement in place as to the sentencing and no agreement was reached on what the sentencing guidelines would be. Although the defense counsel stated that he and the prosecutor had scored the guidelines at 22 years 6 months to 37 years 6 months for the minimum sentence, defense counsel also acknowledged that the guidelines could "come back higher . . . [or] they could come back lower," Plea Tr., 7/22/03, at 6, and the maximum sentence "is whatever the Court feels is appropriate." *Ibid.*

The petitioner was twenty-three years old at the time. He stated in a colloquy with the trial court that he had heard the prosecutor's explanation of the plea bargain and he understood, and he agreed with it. He then assured the trial court that he understood he would be pleading no contest

to the amended charge of second-degree murder and to first-degree criminal sexual conduct, both of which carried a maximum penalty of life imprisonment. *Id*. at 7-8. After the trial court advised the petitioner of the rights that he would be waiving by pleading no contest, the following colloquy took place between the court and the petitioner:

> THE COURT: Now, are you stating that the plea you are making is freely, understandingly and voluntarily made, and there's been no undue influence, compulsion or duress used against you to force you to plead guilty; is that true?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you stating to this Court that no promises have been made, other than those resulting from the plea bargaining process which were stated here on the record to induce this plea; is that also true?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Has anyone threatened you?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Is it your own choice then to enter a no contest plea?
>
> THE DEFENDANT: Yes, sir.

*Id*. at 10-11.

The attorneys' explanations on the record and the trial court's dialogue with the petitioner were sufficient to clarify any misunderstanding that the petitioner may have had about the terms of the plea bargain and his sentencing exposure. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (citing *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993)) (concluding that "the state trial court's proper colloquy can be said to have cured any misunderstanding [a defendant] may have had about the consequences of his plea). Furthermore, during his plea hearing the petitioner expressly

disavowed that any promises, other than those stated on the record, had been made to him, claiming that no undue influence, compulsion, or duress had been used to force him to plead guilty.

At his sentencing hearing, the petitioner confirmed that he "took the cop because [he] didn't want to get hung." Sent. Tr, 9/4/03, at 14. Defense counsel also explained that the petitioner accepted the plea offer because he wanted an opportunity to get out of prison, and he did not want to put the victim's family through a difficult trial. *Id.* at 6. Indeed, had the petitioner gone to trial on the first-degree murder charge and been convicted, he would have been subject to mandatory life imprisonment without the possibility of parole. *See* Mich. Comp. Laws § 750.316(1). The petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). To allow a collateral attack on the plea simply because he supposedly relied on his attorney's mistaken advice "would make every plea subject to attack and render the oral responses given in court meaningless." *Ramos*, 170 F.3d at 565.

The record does not support the petitioner's claim that he was promised a sentence of 22 years 6 months to 37 years 6 months or dismissal of all the charges except the second-degree murder charge, and the petitioner's unequivocal statements at the plea hearing contradict his contention that his plea was based on false promises and was not voluntary or knowing. *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). The petitioner therefore is not entitled to habeas relief on the ground that his plea was not voluntary or knowing.

<center>B.</center>

The petitioner next alleges that he was deprived of his Sixth Amendment right to the effective assistance of counsel due to a variety of failures by his trial counsel. To prevail on a claim of ineffective assistance of counsel, a prisoner must demonstrate "that counsel's performance was

<center>-9-</center>

deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id* . at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that [t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The Strickland framework applies to claims of ineffective assistance of counsel arising from a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first prong of the test remains the same. *Ibid.* However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. In other words, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." *Ibid.*; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

The petitioner alleges that his lawyer was ineffective because he should have objected to the improper scoring of the sentencing guidelines and attempted to have the petitioner's plea withdrawn after it became clear that the sentencing guidelines were not what he had represented to the petitioner. The guideline range mentioned at the plea hearing was 22-1/2 to 37-1/2 years for the minimum sentence; but that range increased to 26-1/4 to 43-3/4 years when the presentence report revealed a more extensive criminal history. Sent. Tr., 9/04/03, at 6, 11. The discrepancy was due to the petitioner's failure to disclose some high-severity juvenile adjudications when the initial calculations were made. Hrg. Tr., 11/29/04, at 4-7, 29.

The increased guideline range would not have furnished grounds for withdrawing the no contest plea, however, because there was no agreement that was impacted by the guideline range and no agreement as to sentencing. Defense counsel was not ineffective for failing to move to withdraw the no contest plea since he had no legal basis to do so, and he was not obliged to engage in a futile gesture. "[T]here can be no constitutional deficiency in . . . counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *Johnson v. Tennis*, 549 F.3d 296, 303 (3d Cir. 2008) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)) (stating that counsel cannot be found ineffective for bringing a meritless motion).

The petitioner also complains that his attorney should have objected to the application of several offense variables, which he believes were misscored. First, he claims that he was erroneously assessed points for use of a weapon. Evidence supporting this enhancement came from the preliminary examination, but the petitioner contends the testimony on his weapon possession

was inconsistent. The prosecutor and the trial court, however, recalled testimony establishing that the petitioner shot the victim twice in the head. Hrg. Tr., 11/29/04, at 31-33. The trial court may have relied on testimony elicited at one of the codefendant's trials; however, sentencing courts have broad discretion to consider various kinds of information, including conduct for which the defendant has been acquitted, when determining the applicable guidelines range. *United States v. Watts*, 519 U.S. 148, 151-54 (1997). The trial court did not err in assessing points for use of a weapon, and defense counsel was not ineffective for failing to object to the trial court's calculation.

Second, the petitioner alleges that he improperly received five points for offense variable 10 dealing with exploitation of a vulnerable victim. The prosecutor alleged that the petitioner was one of six men who sodomized the victim, tortured him, forced him to inhale crack cocaine, and sent him outside naked in sub-zero weather. The victim was then tracked down and shot in the head. The fact that the victim was outnumbered by his assailants supports the conclusion that he was vulnerable to injury and exploited under state law governing offense variable 10. *See People v. Slack*, No. 263266, 2006 WL 3734618, at *4 (Mich. Ct. App. Dec. 19, 2006) (unpublished opinion) (justifying assessment of five points for OV 10 where the victim and the offender differed in strength and where the victim was outnumbered by his assailants and physically restrained). The scoring of offense variable 10 also was justified by the difference in ages between the petitioner, who was twenty-two years old at the time, and the victim, who was only eighteen. *See People v. Johnson*, 474 Mich. 96, 103-04, 712 N.W.2d 703, 707-08 (2006) (concluding that offense variable 10 was accurately scored where the defendant was twenty years old and the victim of the sexual assault was fifteen years old). Defense counsel was not ineffective for failing to object to the trial court's scoring of offense variable 10.

The petitioner's final allegation related to the sentencing guidelines is that he should not have received twenty-five points for offense variable 11 (criminal sexual penetration). He claims that only one sexual penetration occurred and that under Mich. Comp. Laws § 777.41(1)(b) and (2)(c), courts may not score points for the penetration that forms the basis for a charge of first-degree criminal sexual conduct.

The petitioner stipulated to the use of the preliminary examination transcript as a factual basis for the crimes, and the testimony at the preliminary examination established that the victim was sexually penetrated two times – with a broom and with a bottle. The petitioner participated in both of these sexual assaults, either personally or as an aider and abetter. Hrg. Tr., 11/29/04, at 49-54. Therefore, although he was charged with one count of criminal sexual conduct, it was appropriate to score twenty-five points for the second sexual penetration.

There was a valid basis for the scores assigned to each of the offense variables challenged by the petitioner. Therefore, defense counsel was not ineffective for failing to challenge the scores.

C.

The petitioner alleges next that his plea was induced by his attorney's unwillingness to let him testify at trial and by attorney's failure to investigate and interview witnesses, discuss trial strategy and possible defenses with the petitioner, and request a forensic evaluation of the petitioner. The petitioner contends that, in light of these acts and omissions, he felt he had no choice but to plead no contest.

Defense attorneys have a duty to discuss potential strategies with the defendant, *Florida v. Nixon*, 543 U.S. 175, 178 (2004), and "to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. As the Supreme Court explained,

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received").

*Hill v. Lockhart*, 474 U.S. at 59.

The petitioner alleges that several witnesses were willing to testify on his behalf, but he has not suggested what the witnesses would have said had they testified. Therefore, he has failed to show that a more thorough investigation of potential witnesses would have led counsel to change his recommendation about the plea.

Nor has the petitioner shown that he had a viable defense to the charges. Although he claims that his attorney could have asserted duress as a defense, under Michigan law duress cannot excuse a homicide or any criminal activity that leads to the death of another person. *See People v. Moseler*, 202 Mich. App. 296, 299, 508 N.W.2d 192, 194 (1993) (duress not a defense to involuntary manslaughter); *People v. Etheridge*, 196 Mich. App. 43, 56, 492 N.W.2d 490, 497 (1992) (duress defense not available in case where defendant charged with both premeditated and felony murder); *People v. Travis*, 182 Mich. App. 389, 392, 451 N.W.2d 641, 642-43 (1990) (duress not a defense to homicide); *People v. Feldmann*, 181 Mich. App. 523, 532, 449 N.W.2d 692, 697 (1989) (duress

not a defense to first or second degree felony murder); *People v. Dittis*, 157 Mich. App. 38, 41, 403

N.W.2d 94, 95 (1987) (duress not a defense to homicide); *see also Gimotty v. Elo*, 40 F. App'x 29,

32-33 (6th Cir. 2002) (unpublished opinion).  Even if duress were a defense to some of the charges,

the petitioner's decision to go to trial still would have exposed him to the risk of being convicted

of first-degree murder, which was the fate of two of his co-defendants who went to trial.  Because

the evidence against the petitioner was substantial, he could have been convicted of first-degree

murder as well.  As noted, he and his attorney indicated at the sentencing that this is precisely the

outcome that they attempted to avoid by having the petitioner plead no contest to the reduced charge.

The Court concludes that defense counsel was not ineffective for his alleged failure to raise a

defense of duress and for recommending that the petitioner plead no contest to crimes which carried

a less severe penalty than mandatory life in prison without the possibility of parole.  Even if that

performance was deficient, the petitioner has not shown that he would have insisted on a trial if he

could have raised the defense of duress.

The petitioner also claims that his attorney should have requested a mental evaluation of his

competency to stand trial because he has been diagnosed with bipolar and attention deficit disorders.

He alleges further that he has taken several medications for his condition and that in 2001 he was

sent to the Michigan Center for Forensic Psychiatry, where it was determined that he has an

intelligence quotient (IQ) of 65.

An attachment to the habeas petition confirms that the petitioner was referred to the forensic

center in 2001 for an examination of competency to stand trial and criminal responsibility in an

unrelated case.  Although his IQ was indeed in the mildly mentally retarded range of performance,

the licensed psychologist who examined the petitioner determined that the IQ score was notably

lower than the examiner's impressions of the petitioner's intellectual functioning. The examiner opined that the petitioner most likely was not mentally retarded and that he did not present acute signs or symptoms of any severe psychiatric disturbance. *See* Pet. for Writ of Habeas Corpus, Ex. A, William Meyer Evaluation, p. 11.

In the absence of any evidence of a substantial change in the petitioner's condition, there was no need for another examination or hearing to determine mental competency. *See Banks v. Horn*, 939 F. Supp. 1165, 1171 (M.D. Pa. 1996), *judgment vacated on other grounds*, 126 F.3d 206 (3d Cir. 1997) ("Absent evidence of a substantial change in the defendant's condition, there is no constitutional requirement of a second or successive hearing to determine mental competency.") (citing *Senna v. Patrissi*, 5 F.3d 18, 20 (2d Cir. 1993)). Because the previous report concluded that the petitioner was competent to stand trial, defense counsel's decision to forego another examination did not amount to erroneous conduct "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Rather, the choice was reasonable among the available options. *See Link v. Luebbers*, 469 F.3d 1197, 1203 (8th Cir. 2006) (citing *Rompilla v. Beard*, 545 U.S. 374 (2005), and contrasting the strategic decision not to create a battle of experts over the defendant's psychological make-up, which does not constitute ineffective assistance of counsel, with the clearly unreasonable decision to abandon the leads to mitigation of aggravating evidence, which would constitute ineffective assistance of counsel). Therefore, defense counsel was not ineffective for failing to seek a referral to the forensic center.

D.

The petitioner asserts several irregularities in the proceedings before he pleaded no contest. He asserts that he was interrogated by the police in the absence of counsel; the prosecution engaged in witness manipulation by permitting two witnesses to ride to the preliminary examination together; his codefendants' testimony at the preliminary examination was inconsistent and not credible; a codefendant's statement was not disclosed until the day on which he testified at the preliminary examination; and the two firearm charges against him were added on the morning of trial.

Because "[a] voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings," the petitioner waived review of these claims when he pleaded no contest. *Ormsby*, 252 F.3d at 848. As explained in *United States v. Broce*, 488 U.S. 563 (1989),

> [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*Id*. at 569; *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (explaining that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process" and when a defendant pleads guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").

As noted earlier, the petitioner's no contest plea was voluntary and knowingly made, and he was represented by counsel at his plea hearing. Therefore, the petitioner's claims about the police interrogation, the witness manipulation, the preliminary examination, the addition of two firearm charges, and his co-defendants' statements were waived by his no contest plea.

E.

The petitioner also argues that the accumulation of these errors rendered the proceedings unfair and violated his constitutional right to due process. The Supreme Court has never held that cumulative errors may form the basis for granting habeas relief. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) (noting that "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"). The state court's resolution of this issue cannot be contrary to or an unreasonable application of Supreme Court precedent so as to warrant habeas relief.

F.

The petitioner also challenges several aspects of his sentence. He alleges that the sentencing guidelines were incorrectly scored, the trial court relied on facts which he did not admit and which were not proved beyond a reasonable doubt, and his sentence was disproportionate. In addition, the petitioner alleges that he should not have been required to pay the entire amount of restitution.

The Court does not believe the sentencing guidelines were scored improperly, but even if they were, the petitioner could not obtain relief from this Court on that ground. The claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review because it is based solely on state law claim. *See McPhail v. Renico,* 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Although the petitioner had a constitutional right not to be sentenced on "misinformation of constitutional magnitude," *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)), the essence of his argument is that the trial court mis-scored the sentencing guidelines. "A federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and a claim that the trial court mis-scored

-18-

offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

The petitioner also contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to score the guidelines, which had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by the petitioner. The petitioner believes that *Blakely v. Washington,* 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support his position. However, the claim that Michigan's sentencing guideline system, where judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). This Court is bound by that decision. Because the petitioner's sentence fell within the statutorily-authorized maximum penalty, which was not enhanced by judicial factfinding, no Sixth Amendment violation occurred.

The petitioner also alleges that his sentence was disproportionate. A habeas petitioner challenging the severity of a prison sentence on Eighth Amendment grounds faces a formidable task. He may obtain relief only by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow."

*Ibid.* The Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination. *Ibid.* The Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Ibid.*

There is no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957 (1997). However, the Eighth Amendment prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring). The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994) (holding that generally, a sentence within statutory limitations does not violate the Eighth Amendment); *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (holding that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotation marks and citations omitted).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). The Supreme Court overturned a life sentence in *Solem v. Helm*, 463 U.S. 277 (1983), on the ground that it was significantly disproportionate to the crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $100, and his prior felonies also were minor, nonviolent crimes.

By contrast, the Supreme Court recently reaffirmed *Rummel* and found constitutionally proper a sentence of twenty-five years to life imposed upon a fifth felony conviction. *See Ewing v. California*, 538 U.S. 11, 24-31 (2003).

The Court does not believe that the petitioner's sentence of nearly 44 years to 66 years violates the Eighth Amendment. The petitioner was twenty-three years old at sentencing, and the challenged sentence fell within the maximum sentence set by state law. "[A] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Organek*, 65 F.3d at 62 (citation omitted). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)). If Harmelin's life sentence without the possibility of parole for a nonviolent offense was not grossly disproportionate to the offense or the offender, the petitioner's minimum sentence of almost forty-four years for killing, torturing, and penetrating a defenseless person cannot be considered grossly disproportionate. *Cf. Austin*, 213 F.3d at 302 (finding that a sentence of forty to sixty years for second-degree murder was neither extreme nor grossly disproportionate so as to violate the Eighth Amendment). There is no Eighth Amendment violation here.

The petitioner's final allegation about his sentence is that he should not have been required to pay the full amount of restitution. According to the petitioner, restitution in the amount of $7,000 should not be his sole responsibility, but should be shared by him and his codefendants. However, the writ of habeas corpus may be granted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A fine is not a sufficient

restraint on liberty to meet the "in custody" requirement of this statute, particularly when, as here, the prisoner's release was not conditioned on paying the fine. *See United States v. Watroba*, 56 F.3d 28, 28-29 & 29 n.1 (6th Cir. 1995) (construing the custody requirement of 28 U.S.C. § 2255). The petitioner's restitution claim cannot be addressed because neither 28 U.S.C. § 2241 nor 28 U.S.C. § 2254 may be used to challenge a restitution order. *Lara v. Smith*, 132 F. App'x 420, 421 (3d Cir. 2005) (unpublished opinion); *Taylor v. Hamlet*, 88 F. App'x 220, 220 (9th Cir. 2004) (citing *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999)) (unpublished opinion).

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

s/David M. Lawson

DAVID M. LAWSON
United States District Judge

Dated: March 24, 2010

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 24, 2010.

s/Teresa Scott-Feijoo

TERESA SCOTT-FEIJOO

</div>